IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| BETTY SUE HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-01097 |
| | ) | Judge Campbell / Knowles |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 11. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 13.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on December 14, 2010, alleging that she has been disabled since January 1, 2008,[1] due to "physical limitations due

---

[1] Plaintiff subsequently amended her alleged onset date to January 16, 2009. TR 14.

to surgery" and hernias, hypertension, degenerative disc disease, "plastic mesh inside abdominal cavity," high blood pressure, diabetes, "stress," and "cholesterol." *See, e.g.,* Docket No. 9, Attachment ("TR"), pp. 128-29, 157. Plaintiff's application was denied both initially (TR 71-73) and upon reconsideration (TR 80-82). Plaintiff subsequently requested (TR 83) and received (TR 27-59) a hearing. Plaintiff's hearing was conducted on January 8, 2013, by Administrative Law Judge ("ALJ") Scott Shimer. TR 27. Plaintiff and vocational expert ("VE"), Dr. Gary Sturgill, appeared and testified. *Id.*

On February 20, 2013, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 12-22. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since January 16, 2009, the amended alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: depressive disorder, degenerative disc disease, status-post hernia with repair, diabetes mellitus, Type II, obesity, and arthritis (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds

frequently and stand, walk, and sit for 6 hours in an 8-hour day except that the claimant can occasionally stoop, kneel, crouch, and crawl. She can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds. The claimant is limited to simple, repetitive, routine tasks with detailed but not complex instructions. She can have only gradual and infrequent changes in the workplace setting and can have only occasional interaction with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 12, 1958 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, through the date of this decision (20 CFR 404.1520(g)).

TR 14-22.

On April 5, 2013, Plaintiff timely filed a request for review of the hearing decision. TR

7. On April 19, 2014, the Appeals Council issued a letter declining to review the case (TR 1-5),

thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B. Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to properly evaluate the medical opinion evidence of record; (2) relied on a deficient hypothetical question and therefore erroneously found that Plaintiff could perform jobs identified by the VE; (3) improperly evaluated her credibility; and (4) erroneously found that her obesity did not increase the severity of her pain or functional limitations.  Docket No. 12.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded.  *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Evaluation of the Medical Opinion Evidence

Plaintiff first argues that the ALJ erroneously accorded "little weight" to the Medical Source Statement ("MSS") - Physical that was completed by Nurse Scher and signed by both Dr. Hoooper and Nurse Scher. Docket No. 12, p. 14. Plaintiff contends that the ALJ's discounting that opinion because the opinion "was never completed by the treating source; only the first part with yes or no questions was answered" was improper. *Id.* Plaintiff asserts that, even though Dr. Hooper did not complete all of the MSS, the ALJ is not permitted to "disregard the part he did complete," because the Regulations require consideration of all medical opinions. *Id.*, p. 15, *citing* 20 C.F.R. § 404.1527(b). Plaintiff notes that the MSS was signed by both Dr. Hooper and Nurse Scher, and Plaintiff asserts that the completed portion reflects a medical judgment about her physical restrictions. *Id.* Plaintiff argues that the opined physical restrictions would preclude work, and that the MSS - Physical should have been accorded "great if not controlling weight"

because it is not inconsistent with other substantial evidence in the record. *Id.*

Plaintiff additionally argues that the ALJ erroneously accorded the July 13, 2011 assessment of her mental restrictions "little weight." *Id.*, p. 16. Plaintiff maintains that the ALJ should not have discounted the opined mental restrictions simply because the assessment had been completed by Nurse Scher, since Dr. Hooper signed it, "thereby authenticating its contents." *Id.* Plaintiff argues that Dr. Hooper's signature is enough to reflect that the stated opinion is his opinion, and she further argues that her depression is established by multiple acceptable sources, including Dr. Hooper, Dr. Gomez, and "multiple NTNEXSAPC's." *Id.*, *referencing* TR 209-10, 241, 242, 245, 280-82, 290, 305-08.

Plaintiff reiterates her argument that the ALJ did not properly evaluate the medical opinion evidence of record, stating: "Dr. Hooper's opinion of [Plaintiff's] mental and physical restrictions is entitled to substantially greater weight than any other medical opinion; no other physician or psychologist expressing an opinion saw [her] on more than one brief occasion for a consultative exam, and the state-agency consultants did not see her at all or even review all of the medical evidence."

Defendant responds that the ALJ properly considered the opinions of record, including those of Albert Gomez, M.D., S. Kathryn Steele, Psy.D, Beth Scher, N.P., and the State agency medical consultants: Charles Settle, M.D., James Gregory, M.D., Diana Shearer, M.D., P. Jeffrey Wright, Ph.D., and Jenaan Khaleeli, Psy.D. Docket No. 13, p. 5-7. Defendant notes that it is the job of the ALJ to consider the evidence of record and resolve conflicts between the medical opinions, and Defendant asserts that the ALJ in the case at bar properly did so. *Id.*

With regard to Plaintiff's argument that the ALJ did not properly evaluate Dr. Hooper's

opinion, Defendant responds that Plaintiff's contention that the opinion at issue is, in fact Dr.

Hooper's "ignores the medical records surrounding the opinions." *Id.*, p. 7-9. Specifically,

Defendant argues:

> On July 16, 2011, Plaintiff presented to Dr. Hooper for the first
> time since March 2011 asking the doctor to complete these forms
> (Tr. 233, 280). Dr. Hooper refused and stated that Plaintiff needed
> to "talk to the provider who has provided the most [*sic*] of her care
> for her disability related issues" and specifically referred her to Ms.
> Scher (Tr. 280). Dr. Hooper did not see Plaintiff again until July
> 2012 (Tr. 337). On July 13, 2011, Plaintiff presented to Ms. Scher
> to complete the disability forms (Tr. 279). Based on this record, it
> is clear that Ms. Scher and not Dr. Hooper completed the July 2011
> opinions. As such, the ALJ properly found the opinions were
> provided by an "other source (Tr. 20). Therefore, the opinions
> could not be entitled to controlling weight.
>
> In addition to properly identifying the source of the opinion, the
> ALJ properly evaluated the opinions in accordance with agency
> policy (Tr. 20). . . .
>
> First, the ALJ properly recognized that Ms. Scher was Plaintiff's
> treating source (Tr. 20). <u>See</u> 20 C.F.R. § 404.1527(c)(2).
> However, the ALJ properly noted that the physical assessment was
> not fully completed (Tr. 20, 276-78). Ms. Scher answered several
> yes/no questions, but when asked for specific limitations and an
> explanation for the limitations, Ms. Scher left the form incomplete
> (Tr. 276-78). Ms. Scher provided no explanation or support for the
> yes/no responses (Tr. 275-76). . . . Plaintiff attempts rectify this
> deficiency in her brief by citing to evidence that she claims
> supports her allegations. <u>See</u> Pl.'s Br. At 15. However, the state
> agency medical consultants considered the same evidence in
> finding that Plaintiff could perform a range of light work (Tr. 268).
> The physical assessment provides no support and, thus, the ALJ
> properly gave the statement little weight (Tr. 20).

*Id.*, p. 8-9 (footnotes omitted).

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 C.F.R. § 416.927(c) (emphasis added). *See also* 20 C.F.R. § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a

specific amount of weight.[3] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (*quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

The MSS - Physical at issue was completed by Nurse Scher, and signed by both Nurse Scher and Dr. Hooper. TR 275-78. In that MSS, Nurse Scher indicated that she had treated

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

Plaintiff from 1963 until July 13, 2011, the date of the completion of the MSS - Physical.  TR
276.  She noted that Plaintiff suffers from "Hiatal hernia - confirmed by EGD; Back pain - mild
to moderate arthritis (3-11)."  TR 275.  When asked whether there are objective tests available to
quantify the precise levels of pain, fatigue, shortness of breath, or other subjective symptoms
suffered by Plaintiff, Nurse Scher answered "no."  *Id.*  Nurse Scher also checked the boxes
indicating that: (1) Plaintiff had reported that her symptoms prevented her from working;
(2) Plaintiff's symptoms were consistent with the impairments from which she suffers;
(3) Plaintiff's stamina and endurance were limited to the extent that she would experience
difficulty working an 8-hour workday without several intermittent periods of rest, each exceeding
15 minutes; (4) Plaintiff would need to lie down intermittently during the course of an 8-hour
workday; (5) Plaintiff would need to alternate sitting and standing during the course of an 8-hour
workday; (6) Plaintiff experienced nervousness, depression, or anxiety, difficulty concentrating
or remaining attentive, and difficulty following or remembering directions; (7) It was reasonable
to expect significant variations in Plaintiff's ability to sustain a consistent level of functioning
from day to day; (8) Plaintiff would experience good days and bad days resulting in absences
from work exceeding 2 days per month; and (9) Plaintiff's condition is aggravated by, and her
symptoms exacerbated by, periods of physical and emotional stress.  TR 275-76.

Nurse Scher left the remainder of the MSS - Physical blank.  *See* TR 276-78.  She
rendered no opinion regarding Plaintiff's abilities to lift and carry, stand and walk, or sit.  *Id.*
She further rendered no opinion regarding Plaintiff's endurance, or Plaintiff's ability to perform
any postural activities, such as climbing, balancing, stooping, crouching, kneeling, crawling, or
bending.  *Id.*  She did not indicate whether Plaintiff's reaching, handling, feeling, pushing,

speaking, pulling, seeing, or hearing were affected by her impairments, nor did she indicate

whether Plaintiff's impairments caused any environmental restrictions. *Id.* When asked to state

any other work-related activities that could be affected by or attributable to Plaintiff's

impairment(s) and to indicate how the activities could be affected, Nurse Scher left the space

blank. *Id.*

As noted, the MSS was completed by Nurse Scher. Although a nurse is not among the

"acceptable medical sources" enumerated in 20 CFR 404.1513(a), the Regulations provide that

the ALJ may properly:

> "use evidence from other sources to show the severity of your
> impairment(s) and how it affects your ability to work. Other
> sources include, but are not limited to -
>
> (1) Medical Sources not listed in paragraph (a) of this section (for
> example, nurse-practitioners, physicians' assistants, naturopaths,
> chiropractors, audiologists, and therapists).

20 CFR 404.1513(d).

The ALJ in the instant action discussed the July 13, 2011 MSS - Physical as follows:

> The undersigned notes that the physical residual functional
> capacity questionnaire was never completed by the treating source;
> only the first part with yes or no questions was answered. (Exhibit
> 9F). This document is given little weight and greater weight is
> given to the State agency medical consultants' assessments.

TR. 20.

As an initial matter, regardless of whether the MSS - Physical was completed by Dr.

Hooper or Nurse Scher, the ALJ is not bound to accept opinions provided via yes/no checked-

box questionnaires because those opinions, without explanation or documentation, are not

supported by medical findings, and the ALJ may properly reject the opinion of a treating

physician where that opinion is not sufficiently supported by medical findings. *See, e.g., Combs v. Commissioner*, 459 F.3d 640, 652 (6th Cir. 2006)(en banc); *Walters v. Commissioner*, 127 F.3d 525, 530 (6th Cir. 1997); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

As discussed above, Nurse Scher answered only the yes/no questions in the first part of the questionnaire; she left the remainder of the MSS blank. *See* TR 257-76. Additionally, Nurse Scher did not cite any medical records or evidence to support her opinions, nor did she in any way explain those opinions. *See id.* For these reasons alone, the ALJ could properly accord the MSS - Physical little weight.

Plaintiff also argues that the ALJ erroneously accorded little weight to her July 13, 2011 Ability to do Work-Related Activities - Mental form. Docket No. 12, p. 16. Plaintiff argues the ALJ should not have discounted the opined mental restrictions simply because that form was completed by Nurse Scher, because Dr. Hooper signed it, "thereby authenticating its contents," and because her depression is established by several acceptable sources, including Dr. Hooper, Dr. Gomez and "multiple NTNEXSAPC's." *Id.*

As noted, Nurse Scher completed an Ability to do Work-Related Activities - Mental form regarding Plaintiff on July 13, 2011. TR 273-74. In that assessment, Nurse Scher opined that Plaintiff had "limited, but satisfactory" abilities to: (1) sustain an ordinary routine without special supervision; (2) ask simple questions or request assistance; (3) be aware of normal hazards and take appropriate precautions; and (4) adhere to basic standards of neatness and cleanliness. *Id.* She further opined that Plaintiff had "seriously limited, but not precluded" abilities to: (1) remember work-like procedures; (2) maintain regular attendance and be punctual within customary, usually strict tolerances; (3) accept instructions and respond appropriately to criticism

from supervisors; (4) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (5) respond appropriately to changes in a routine work setting; and (6) maintain socially appropriate behavior. *Id.*

Nurse Scher additionally opined that Plaintiff was "unable to meet competitive standards" in the following areas: (1) understanding and remembering very short and simple instructions; (2) carrying out very short and simple instructions; (3) working in coordination with or proximity to others without being unduly distracted; (4) making simple work-related decisions; (5) dealing with normal work stress; (6) setting realistic goals or making plans independently of others; (7) interacting appropriately with the general public; and (8) traveling in unfamiliar places. *Id.* She further opined that Plaintiff had "no useful ability to function" in these areas: (1) maintaining attention for two hour segments; (2) completing a normal workday and work week without interruptions from psychologically based symptoms; (3) performing at a consistent pace without an unreasonable number and length of rest periods; (4) understanding and remembering detailed instructions; (5) carrying out detailed instructions; (6) dealing with stress of semiskilled and skilled work; and (7) using public transportation. *Id.* Nurse Scher also opined that Plaintiff was unable to manage benefits in her own best interest and would be absent from work more than 4 days per month. *Id.*

As support for her findings, Nurse Scher stated simply:

> Because of patient's depression, pt is unable to concentrate and focus and follow simple instructions. Pt is just so depressed that holding a job would not be feasible.

TR 273.

When asked to describe any additional reasons why Plaintiff would have difficulty

working at a regular job on a sustained basis, Nurse Scher answered: "None." TR 274.

The ALJ discussed Nurse Scher's July 13, 2011, Ability to do Work-Related Activities -

Mental form regarding Plaintiff, stating:

> In July 2011, a nurse practitioner completed a form regarding the
> claimant's alleged mental impairments and their impact on her
> ability to perform substantial gainful activity. (Exhibit 8F). The
> undersigned has given little weight to the conclusion that, due to
> the claimant's depression, she is unable to concentrate, focus,
> follow simple instructions and hold a job. *This conclusion is
> unsupported by the claimant's longitudinal treatment notes and the
> remaining medical evidence of record.* The undersigned notes, as
> well, that a nurse practitioner is not an "acceptable medical source"
> pursuant to SSR 06-03p.

TR 20 (emphasis added).

As to the remaining opinion evidence concerning Plaintiff's mental impairments, the ALJ

stated:

> The claimant underwent a mental status examination with S.
> Kathryn Steele, Psy. D., in April 2011, as well. (Exhibit 4F). She
> reported problems with "stress" and depression, which she
> attributed to financial worries since being "laid off" from her job.
> The claimant indicated that she had been prescribed medication by
> her primary care physician but that this medication was ineffective.
> She denied a diagnosis for a mood disorder, a history of outpatient
> mental health treatment, or a history of psychiatric hospitalization.
> The claimant's mental status examination was essentially normal
> despite the claimant's complaints of restricted activities of daily
> living. The claimant's assertion that she spends most of each day
> sitting around the house due to not feeling well is not supported by
> clinical findings or treatment notes. She stated that a current hernia
> prevents her from engaging in activity and makes her embarrassed
> to do things in public. However, the claimant acknowledged that
> she does shop for groceries once weekly and cooks meals twice
> weekly. The claimant denied performing household chores but
> stated that she can take care of her own personal needs. The
> claimant drove herself to her appointment and stated that she
> drives as needed without difficulty. On presentation, the

claimant's affect was appropriate and her mood appeared depressed and sad. The claimant's speech was within normal limits, her thinking was organized, and there was no evidence of delusions. Thought content appeared pessimistic and self-pitying. While the claimant reported suicidal ideation two months prior, she denied current suicidal thoughts. The claimant's insight and judgment both appeared to be good. The claimant reported daily crying spells related to her medical health and financial difficulties.

Following testing, Dr. Steele concluded that the claimant is functioning within the average range of intelligence and that her depressive symptoms appear related to her reported medical concerns. Of note, Dr. Steele stated that the claimant does not appear to meet the criteria for a mood disorder but nonetheless she assigned the claimant with adjustment disorder with depressed mood. The claimant was assigned a GAF of 60. The undersigned notes that the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM-IV 34 (4th ed., text revision 2000) indicates that a GAF score of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational or school functioning.

Dr. Steele further indicated that the claimant would not have difficulty understanding and remembering detailed directions and noted that the claimant was able to understand and participate in a complex conversation without difficulty. The claimant would not have difficulty carrying out simple and/or complex instructions and is capable of completing work tasks in an efficient and timely manner. As far as the claimant's interpersonal relationships, Dr. Steele noted that the claimant was, for the most part cooperative with the examiner and is unlikely to have difficulties interacting with co-workers or supervisors on an appropriate level. The claimant would be able to respond appropriately to changes in workplace settings.

The undersigned has given this assessment some weight but has given the claimant's subjective complaints the benefit of the doubt in limited her to simple, repetitive, routine tasks with detailed but not complex instructions, in limiting her interaction with the general public, and in limiting her to occasional change in the work setting.

TR 19-20.

The ALJ also noted:

> While the undersigned finds that the medical opinions of the state
> agency medical consultants are overly expansive in light of the
> objective medical evidence of record, their opinions also support a
> finding of "not disabled" and their opinions do deserve some
> weight, particularly in a case like this in which there exist a
> number of other reasons to reach similar conclusions. (Exhibits
> 12F and 13F).

TR 20.

The ALJ further discussed Plaintiff's mental impairments, including her depression, as

follows:

> In activities of daily living, the claimant has mild restriction. The
> claimant cares for herself, prepares simple meals, and shops for
> groceries. She also takes care of her grandchildren as needed.
> (Exhibit 4F).
>
> In social functioning, the claimant has moderate difficulties. While
> the claimant stated that she tends to get angry, she is able to engage
> in social activity appropriately and, as mentioned above, enjoys
> caring for and spending time with her grandchildren. (Exhibit
> 12F).
>
> With regard to concentration, persistence or pace, the claimant has
> moderate difficulties. The claimant has some limitation in her
> work-like duties due to these difficulties but is able to perform a
> reduced range of light work.
>
> As for episodes of decompensation, the claimant has experienced
> no episodes of decompensation, which have been of extended
> duration.
>
> Because the claimant's mental impairment does not cause at least
> two "marked" limitations or one "marked" limitation and
> "repeated" episodes of decompensation, each of extended duration,
> the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C"
> criteria are satisfied. In this case, the evidence fails to establish the

presence of the "paragraph C" criteria.

> The undersigned notes that the claimant has declined a recommendation to see a psychiatrist, stating that it has not helped in the past. (Exhibit 10F). Consultative examination results reflect that the claimant put forth minimal effort on some tasks, reducing her credibility. Currently, the claimant is not receiving any treatment from a mental health professional, indicating that her symptoms are not as severe as alleged.

> . . . The record reflects that the claimant . . . retains the mental capacity to perform the demands of low stress work. . . .

> . . .

> While the claimant has complained of depression, her reluctance to seek treatment indicates that her condition is not as disabling as alleged. In June 2011, the claimant stated that the Celexa prescribed by her family doctor had not really helped her depression but she firmly expressed that she did not wish to be referred to a psychologist or a psychiatrist for mental health treatment. (Exhibit 10F). . . . While the claimant complained generally of depression in October 2012, she was alert and oriented in all spheres on examination, was cooperative and had intact cognitive function with normal mood and affect and good insight and judgment. (Exhibit 18F).

TR 15-16, 18.

Ultimately, the ALJ concluded:

> In sum, in light of the claimant's status-post hernia repair, degenerative disc disease and arthritis, the undersigned has limited the claimant to occasional stooping, kneeling, crouching, and crawling, as well as climbing ramps and stairs. The claimant can never climb ladders, ropes, and scaffolds. The undersigned has also considered the claimant's depressive disorder in limiting her to simple, repetitive, routine tasks with detailed but not complex instructions, and in limiting her to gradual and infrequent changes in the workplace setting with only occasional interaction with the general public. However, due to the aforementioned inconsistencies, particularly the relatively benign physical examinations and the extent of the claimant's daily activities, the

> undersigned cannot find the claimant's allegation that she is
> incapable of all work activity to be credible.

TR 20.

As can be seen in the quoted passages above, and as will be discussed in greater detail in the statements of error below, the ALJ in the instant action discussed the medical evidence of record, including the results of Plaintiff's MRIs, lab tests, etc., the treatment records of Plaintiff's primary care treating providers, Dr. Wayne Hooper and his nurse, Nurse Scher, the medical records from the Sumner Medical Group and the Sumner Regional Medical Group, and the opinions of the State agency medical consultants. TR 15-20, *citing* TR 208-32, 233-38, 239-42, 243-46, 273-74, 279-85, 287-300, 301-04, 311-33, 334-349.

When reviewing the evidence of record, the ALJ must consider all medical opinions and determine the weight to be accorded to each. 20 C.F.R. § 416.927(c). When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). Because the ALJ in the instant action considered all of the medical opinions (as well as the medical and testimonial evidence) of record and articulated the weight accorded to each and the reasons therefore, the ALJ could properly accord little weight to Plaintiff's MSS - Physical and MSS - Mental. Plaintiff's arguments on this point fail.

## 2. ALJ's Hypothetical Question and Reliance on the Answer Thereto

Plaintiff argues that the hypothetical questions the ALJ posed to the VE failed to include several of the mental and physical restrictions that the VE had opined would preclude work. Docket No. 12, p. 17-18. Plaintiff contends that if the hypothetical questions posed are flawed,

21

the ALJ cannot rely on the VE's answer to those hypotheticals as substantial evidence. *Id.* Plaintiff asserts, therefore, that the ALJ's finding that there were a significant number of jobs in the national economy that Plaintiff could perform was not supported by substantial evidence. *Id.*

Defendant responds that the ALJ's hypothetical questions posed to the VE properly incorporated the impairments and limitations he found credible, and that as such, the ALJ could rely upon the VE's answers that there was work existing in the national economy that Plaintiff could perform. Docket No. 13, p. 15-16.

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The Commissioner's burden at step five can be satisfied by relying on the grid rules only if Plaintiff is not significantly limited by nonexertional impairments, such as mental limitations, manipulative limitations or environmental limitations. *Abbot v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990). In the presence of nonexertional limitations that would preclude the application of the grid, "expert testimony would be required to satisfy the Secretary's burden of proof regarding the availability of jobs which this particular claimant can exertionally handle." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1983). In other words, the ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820

F.2d at 779 (*quoting O'Banner v. Sec'y of Health, Ed. & Welfare*, 587 F.2d 321, 323 (6th Cir.

1978)).

At Plaintiff's hearing, the ALJ posed the following hypothetical questions to the VE and

received the following responses:

> Q    Okay. Let me ask you a couple of hypothetical questions, and for my first hypothetical question, I want you to assume a person of the claimant's age, education, and the work past [*sic*] just described. A good portion of this RFC - - I'm going to read it to you, but it's coming from the DES, for this first one, limits at 6F and with some additional limitations in her - - so assume this person would be restricted to light exertional level work with only occasional balancing, stooping, kneeling, crouching, and crawling, and occasionally climbing ramps and stairs; no climbing ladders, ropes, or scaffolding; would need a job that involves simple, routine, repetitive tasks and maybe some lower level detail, but not complex type of work tasks; would need a job that gradual [*sic*] and infrequent workplace changes; and only occasional contact with the general public. It sounds to me like the past work would be ruled out - -

> A    That's correct, Your Honor.

> Q    - - even at the light level just because of the mental health limitations; is that correct?

> A    That is correct.

> Q    With those limitations would there be any other jobs available?

> A    Well, let me offer you figures for unskilled, light work that would allow for the restrictions you've noted. They include general office clerks numbering approximately 4,200 in the state economy and approximately 230,000 in the national economy. A representative <u>DOT</u> code number for office clerks is 222.587-038. A second example is office helpers. They number approximately 2,000 in the state and

approximately 115,000 in the nation. A sample <u>DOT</u> code number is 239.567-010. A third example of unskilled, light work is order clerks. They number approximately 5,000 in the state and approximately 215,000 in the nation. A representative <u>DOT</u> code number is 229.587-018.

Q      Now, using Exhibit 8F as, as our basis - - let's start with this. That - - Dr. Hooper, in that form, indicated that the claimant would miss more than four days of work per month. If that were a limitation added to the limitations that I just described, would that allow for any of the jobs that I named or any other job in the national economy?

A      No, Your Honor. That's well over the allowable absenteeism rate found in competitive employment.

. . .

Q      And it, it, it indicates some problems with concentration and pace, but let's assume this. If a person was unable to sustain attention, concentration, persistence, and pace for let's, lt's say periods of up to one hour throughout an eight-hour workday, would these jobs that I named - - or that you named in hypo number one exist?

A      No, Your Honor.

Q      Would any job allow for those kinds of limitations?

A      No, that would preclude work.

Q      And I think the individual - - or the claimant - - described some - - the need to elevate her legs throughout the day at waist level. Would any job, at the light or less level, with the limitations we named, accommodate those limitations?

A      No, Your Honor. Even sedentary work is precluded with the need to elevate one's lower extremities to that height.

TR 55-57.

Plaintiff's counsel then asked the VE the following questions, and received the following

answers:

> ATTY: . . . The need to lie down intermittently during the workday would be inconsistent with competitive work, would it not?

> VE: That really is incompatible with work so it would preclude all work.

> ATTY: If an individual were required to have rest breaks exceeding those normally tolerated, that is, 15 minutes every two hours, would they be able to maintain competitive employment?

> VE: No.

TR 57.

As can be seen, the ALJ posed several hypothetical questions to the VE, each based on limitations contained in different Exhibits, and each containing both exertional and nonexertional limitations. *See* TR 55-57. Although Plaintiff argues that the ALJ's hypothetical questions failed to include several of the mental and physical restrictions that the VE had opined would preclude work, the ALJ posed different hypothetical questions with different combinations of impairments. *See id.* Furthermore, the ALJ need only accept or include the limitations he deems credible. *See, e.g., Cline v. Shalala,* 96 F.3d 146, 150 (6th Cir. 1996); *Stanley v. Secretary*, 39 F.3d 115, 118-19 (6th Cir. 1994); *Blacha v. Secretary*, 927 F.2d 228, 231 (6th Cir. 1990).

As discussed *passim*, ultimately, the ALJ is charged with examining and weighing the evidence, evaluating Plaintiff's credibility, and determining Plaintiff's limitations and her resultant residual functional capacity. After considering the medical and testimonial evidence of record, the ALJ in the instant action determined that Plaintiff retained the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). TR 16. Specifically, the ALJ

25

found that Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for 6 hours in an 8-hour day; occasionally stoop, kneel, crouch, and crawl; and occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. *Id.* The ALJ also found that Plaintiff was limited to simple, repetitive, routine tasks with detailed but not complex instructions; could have only gradual and infrequent changes in the workplace setting; and could have only occasional interaction with the general public. *Id.*

The VE testified that an individual with the above residual functional capacity limitations would be unable to perform Plaintiff's past relevant work, but would be able to make a successful adjustment to other work that exists in significant numbers in the national economy, including work as a general office clerk (approximately 4,200 in the state economy and approximately 230,000 in the national economy), office helper (approximately 2,000 in the state and approximately 115,000 in the nation), and/or order clerk (approximately 5,000 in the state and approximately 215,000 in the nation).

Because the ALJ posed hypothetical questions that accurately represented Plaintiff's credible exertional and nonexertional limitations, the ALJ properly relied on the VE's answers to those hypothetical questions to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F.2d at 779. Accordingly, Plaintiff's claim fails.

### 3. Plaintiff's Credibility

Plaintiff next argues that the ALJ improperly discounted her credibility. Docket No. 12, p. 18-21. Plaintiff notes that the ALJ's discussion of her credibility is not found in one part of

his decision, but rather, is "interspersed at various points throughout." *Id.*, p. 18. Plaintiff takes issue with each point raised by the ALJ, stating:

> The ALJ first notes that [Plaintiff] declined to see a psychiatrist, stating it had not helped in the past (Tr. 16). However, the evidence does not reflect that Dr. Hooper made a referral to a psychiatrist or psychologist; he merely raised it as a possibility (Tr. 281). Moreover, Dr. Hooper was already prescribing [Plaintiff] an anti-depressant (Celexa), precisely what a psychiatrist would do. *Id.* Finally, [Plaintiff] was financially strapped, as [she] testified her income was necessary to pay the household expenses and that it was very difficult financially to live on her husband's income (Tr. 48). The simple fact is that [she] could not afford costly psychiatric or psychological treatment.

> The ALJ next complained about [Plaintiff's] "minimal effort" on cognitive tests (Tr. 16). However, she is does not [*sic*] allege cognitive deficiencies: she is an intelligent woman who through persistence and hard work advanced through the ranks of her employer from material handler to lead operator to shipping clerk to accounting before finally arriving at shipping and receiving manager (Tr. 41). [Plaintiff] is depressed - she is not mentally deficient.

> The ALJ next challenged the alleged inconsistency between [Plaintiff's] testimony as to whether she stopped working due to her impairments or to work force reduction (Tr. 17). . . . [T]here is no inconsistency between [Plaintiff's] testimony and earlier statements as to why she stopped working: she stopped working because her employer laid her off when she could no longer do her job satisfactorily (Tr. 36-38, 157). . . .

> . . . [T]he ALJ concluded that the fact that [Plaintiff] cared for her grandchildren occasionally was inconsistent with her alleged functional limitations (Tr. 17). However, this activity is in no way comparable to competitive fulltime [*sic*] employment, as she cared for three of the grandchildren only two days a week for three hours each time while her daughter attended school and for the fourth only briefly until her son got his act together, her husband was available to help her, and she engaged in this activity for only two months (Tr. 44-45). . . .

> Although not framed specifically in terms of credibility, the
> ALJ cites [Plaintiff's] receipt of unemployment benefits as
> evidence that "she was not totally disabled as she alleged" (Tr. 14).
> . . . This suggests the ALJ employed an improper legal standard in
> evaluating whether [Plaintiff] was disabled.

*Id.*

Plaintiff argues that the ALJ failed to consider her limited mobility, limited daily activities, the fact that her husband performs most of the household chores, her need to elevate her legs much of the day because of pain and swelling in her legs and feet, the fact that she is sometimes not able to afford her medication, and the objective medical evidence revealing a herniated disc at L4-5 with moderate stenosis coupled with obesity. *Id.*, p. 21, *referencing* TR 47, 49-52, 325. Plaintiff further argues that the ALJ failed to consider her "exemplary work history (Tr. 135-136) and the fact that she returned to her job following multiple abdominal surgeries (Tr. 42)." *Id.* Plaintiff contends that the ALJ should have considered these things when evaluating her credibility. *Id.*

Defendant responds that the ALJ properly assessed Plaintiff's credibility and determined that Plaintiff's allegations regarding her limitations were not totally credible because those allegations were inconsistent with the record as a whole, including the opinion evidence, her medical treatment, and the objective medical evidence. Docket No. 13, p. 4-5. Defendant argues that the ALJ appropriately evaluated the medical and testimonial evidence of record, identified many inconsistencies in the record, rendered a reasoned decision that was supported by substantial evidence, and articulated the reasons for his decision. *Id.*, *passim*.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").  Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity."  *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)).  After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms

are not credible.  *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997);

*Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y*

*of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

After considering the evidence of record, the ALJ in the instant action found that

Plaintiff's "medically determinable impairments could reasonably be expected to cause some of

her alleged symptoms; however, [her] statements concerning the intensity, persistence and

limiting effects of these symptoms are generally not credible for the reasons explained in this

decision."  TR 17.  In so finding, the ALJ discussed Plaintiff's credibility as follows:

> . . . The undersigned notes that following her alleged onset date,
> the claimant received unemployment benefits, which necessarily
> implies that she was not totally disabled as alleged.  In order to
> receive state unemployment benefits, an individual must certify
> that she is able to work, is available for full-time work, is willing to
> accept suitable work if offered, and is actively seeking full-time
> work each week.  (Exhibit 2D).
>
> . . .
>
> The undersigned notes that the claimant has declined a
> recommendation to see a psychiatrist, stating that it has not helped
> in the past.  (Exhibit 10F).  Consultative examination results reflect
> that the claimant put forth minimal effort on some tasks, reducing
> her credibility.  Currently, the claimant is not receiving any
> treatment from a mental health professional, indicating that her
> symptoms are not as severe as alleged.
>
> . . .
>
> At her hearing, the claimant first testified about her prior job
> duties.  She stated that, as a shipping supervisor, she had physical
> duties, such as moving containers, as well as customer service
> responsibilities.  When asked how her job came to an end, the
> claimant stated that she became ill and was no longer able to
> perform her required duties.  When the undersigned asked the
> claimant about paperwork indicating that she was let go due to a

reduction in job force rather than to illness, the claimant admitted that there was a period when personnel was being let go but that, at the time she was let go, she was the only one. . . . When asked about July 2009 treatment notes in which she reported taking care of three children under 10, the claimant responded that she helped care for her grandchildren (a nine-year old and four-year-old twins) when her daughter went back to school. . . . On an average day, the claimant alleged that she spends 6-7 hours with her feet elevated to waist level.

There is some inconsistency in the testimony as to whether the claimant stopped performing work due to her impairments or to work-force reduction. However, the undersigned notes that as the claimant is found not to be disabled, the discrepancy in her testimony serves only as a further limitation to her credibility.

. . . The Administrative Law Judge recognizes that childcare, by its very nature, requires a certain degree of lifting, carrying, standing, walking, pushing, pulling, bending, and stooping. Such activity is inconsistent with the functional limitations alleged by the claimant.

. . .

In March 2011, the claimant did complain of low back "discomfort" with some radiation into the buttocks and legs. She reported that she has to sit after standing for more than 10 minutes at a time and cannot sleep. (Exhibit 2F). On examination, the claimant had negative straight leg raising and reflexes were brisk in the knees and ankles. No motor weakness was seen. The claimant did complain of tenderness on palpation to her lower spine. Dr. Wayne Hooper assessed the claimant with likely osteoarthritis, with a possible inflammatory component. Images takes [*sic*] of the claimant's lumbar spine at that time showed mild to moderate lower lumbar spine degenerative changes with disc space narrowing and osteophyte formation. Images taken of the claimant's spine in November 2011 showed some degenerative changes with herniation at L4-L5, but no stenosis or nerve root impingement was noted. (Exhibit 17). October 2012 treatment notes indicate that the claimant had normal strength in all extremities as well as full range of motion. (Exhibit 18F). The claimant had normal gait.

. . .

While the claimant has complained of depression, her reluctance to seek treatment indicates that her condition is not as disabling as alleged. In June 2011, the claimant stated that the Celexa prescribed by her family doctor had not really helped her depression but she firmly expressed that she did not wish to be referred to a psychologist or a psychiatrist for mental health treatment. (Exhibit 10F). At that time, the claimant indicated that Cymbalta had improved her back pain. While the claimant complained generally of depression in October 2012, she was alert and oriented in all spheres on examination, was cooperative and had intact cognitive function with normal mood and affect and good insight and judgment. (Exhibit 18F).

. . .

Dr. Albert Gomez performed a consultative examination on the claimant in April 2011. (Exhibit 3F). . . . [The claimant] complained of low back pain and stated that is had [*sic*] been present for seven years, although the claimant did not complain of back discomfort to her long-time primary care physician until March 2011. . . . The claimant asserted that she last worked in 2008, inconsistent with her testimony and earnings report.

On examination, the claimant was alert and oriented in all spheres, and appeared to be in no acute distress. She presented with a normal gait and was able to get on and off the examination table without difficulty. Moderate tenderness to palpation was noted on the claimant's cervical spine, but range of motion was normal. The claimant had full range of motion in both shoulders; the claimant complained of moderate tenderness to palpation of the left shoulder. Full range of motion was noted bilaterally in the claimant's elbows, wrists, hips, knees, and ankles, and the claimant had normal grip strength. Motor strength was 5/5 in the upper and lower extremities. Deep tendon reflexes were normal, as was sensation. Moderate tenderness was noted on palpation to the claimant's lumbar spine. Full range of motion was seen except for slightly limited flexion. The claimant was able to tandem walk, heel walk, and toe walk normally, and could squat and stand on one leg. Dr. Gomez assessed the claimant with diabetes, chronic low back pain, degenerative joint disease and depression and concluded that the claimant would be able to occasionally lift 20-30 pounds and can stand or sit for at least six hours in an eight-

hour workday, with normal breaks. As this assessment and minimal findings are consistent with the remaining medical evidence of record and with the residual functional capacity set forth above, the undersigned has given it significant weight. Of note, Dr. Gomez placed no functional limitations on the claimant.

The claimant underwent a mental status examination with S. Kathryn Steele, Psy.D. in April 2011, as well. (Exhibit 4F). She reported problems with "stress" and depression, which she attributed to financial worries since being "laid off" from her job. . . . The claimant's mental status examination was essentially normal despite the claimant's complaints of restricted activities of daily living. The claimant's assertion that she spends most of each day sitting around the house due to not feeling well is not supported by clinical findings or treatment notes. She stated that a current hernia prevents her from engaging in activity and makes her embarrassed to do things in public. However, the claimant acknowledged that she does shop for groceries once weekly and cooks meals twice weekly. The claimant denied performing household chores but stated that she can take care of her own personal needs. . . .

. . .

The undersigned . . . has given the claimant's subjective complaints the benefit of the doubt in limiting her to simple, repetitive, routine tasks with detailed but not complex instructions, in limiting her interaction with the general public, and in limiting her to occasional change in the work setting.

. . .

In sum, in light of the claimant's status-post hernia repair, degenerative disc disease and arthritis, the undersigned has limited the claimant to occasional stooping, kneeling, crouching, and crawling, as well as climbing ramps and stairs. The claimant can never climb ladders, ropes, and scaffolds. The undersigned has also considered the claimant's depressive disorder in limiting her to simple, repetitive, routine tasks with detailed but not complex instructions, and in limiting her to gradual and infrequent changes in the workplace setting with only occasional interaction with the general public. However, due to the aforementioned inconsistencies, particularly the relatively benign physical examinations and the extent of the claimant's daily activities, the

> undersigned cannot find the claimant's allegation that she is incapable of all work activity to be credible.

TR 14-20.

As can be seen, the ALJ's decision specifically addresses not only the medical evidence, but also Plaintiff's testimony and her subjective claims, clearly indicating that these factors were considered. *Id.* It is clear from the ALJ's articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ noted inconsistencies between the evidence and Plaintiff's allegations, and chose to rely on evidence that was contrary to Plaintiff's subjective complaints. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742

F.2d at 975.

As discussed above, the ALJ, after considering the medical and testimonial evidence of record, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are generally not credible for the reasons explained in this decision." TR 17. The ALJ's decision clearly articulates his reasons for discounting Plaintiff's credibility and the Regulations do not require more. The ALJ observed Plaintiff during her hearing, assessed the medical records, reached a reasoned decision, and articulated the basis for that decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 4. Evaluation of Plaintiff's Obesity and its Effects

Finally, Plaintiff argues that the ALJ erroneously found "no convincing evidence in the record that obesity increases the severity or functional limitations of any other impairment." Docket No. 12, p. 21, *quoting* TR 15. Plaintiff argues that she is obese and that the ALJ so found, that she has a documented herniated lumbar disc with moderate stenosis as well as osteoarthritis and degenerative lumbar disc disease, and that she is in pain. *Id.* Plaintiff asserts, "Common sense and human experience, not to mention human anatomy, compels a conclusion that an obese person with a herniated disc, osteoarthritis, and degenerative lumbar disc disease is going to experience more severe pain and functional limitations than a non-obese person, notwithstanding the ALJ's finding to the contrary." *Id.*, p. 22.

Defendant responds that the ALJ considered Plaintiff's obesity in accordance with SSR

35

02-1p and properly determined that Plaintiff's obesity did not increase the severity or functional limitations of any other impairment. Docket No. 13, p. 12, *citing* TR 15. Defendant argues that Plaintiff's "common sense" argument is contrary to agency policy and ignores the medical opinions of record. *Id.*

SSR 02-1p addresses the evaluation of obesity, and states in relevant part as follows:

> We will consider obesity in determining whether:
>
> - The individual has a medically determinable impairment. . . .
> - The individual's impairment(s) is severe. . . .
> - The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. . . .
> - The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy. . . .
>
> . . .
>
> . . . [W]e will also consider the possibility of coexisting or related conditions, especially as the level of obesity increases . . .
>
> . . .
>
> However, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.
>
> . . .
>
> Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. . . . The combined effects of obesity with other impairments may be greater than might be expected without obesity. . .
>
> . . .
>
> . . . When we identify obesity as a medically determinable

impairment . . ., we will consider any functional limitations
resulting from the obesity in the RFC assessment, in addition to
any limitations resulting from any other physical or mental
impairments that we identify.

The ALJ in the case at bar found that Plaintiff had the following severe impairments:

depressive disorder, degenerative disc disease, status-post hernia with repair, diabetes mellitus,

Type II, *obesity*, and arthritis.  TR 14.  The ALJ found that these impairments "more than

minimally impact" Plaintiff's ability to perform work-related activities.  *Id.*  Discussing

Plaintiff's obesity specifically, the ALJ stated:

As of October 2012, the claimant weighed 200 pounds at 64 inches
tall.  (Exhibit 18F).  Although there is no specific listing for
evaluating the claimant's obesity under the Listing of Impairments,
the undersigned has considered Social Security Ruling 02-01.
However, there is no convincing evidence in the record that obesity
increases the severity or functional limitations of any other
impairment.  Therefore, the criteria for this Ruling are not met.

TR 15.

As discussed above, the ALJ in the case at bar has thoroughly considered the medical and

testimonial evidence of record, including that related to Plaintiff's obesity.  In so doing, he found

that Plaintiff's obesity was a severe impairment, but not severe enough to meet the criteria for

SSR 02-01.  This determination is within his province.

Plaintiff's argument that "Common sense and human experience, not to mention human

anatomy, compels a conclusion that an obese person with a herniated disc, osteoarthritis, and

degenerative disc disease is going to experience more severe pain and functional limitations than

a non-obese person, notwithstanding the ALJ's finding to the contrary" (Docket No. 12, p. 22),

ignores the fact that the Social Security Act and Regulations mandate that the ALJ's decision

must be based on the medical and testimonial evidence of record and supported by substantial evidence. Plaintiff's obesity is part of the record, as are her subjective complaints and reported limitations. Accordingly, the sources rendering the medical opinion evidence of record were aware of Plaintiff's obesity and reported limitations, as well as her subjective complaints as reported in her treatment records and examinations, and yet none opined that Plaintiff's obesity increased the severity or functional limitations of any other impairment as necessary under the Act, Regulations, listings, or SSRs.

SSR 02-01 states in part:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment *may or may not* increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

The ALJ in the case at bar has done just that; he has evaluated Plaintiff's obesity and its impact based on the information in the case record, including, *inter alia*, the objective medical evidence and the opinion evidence, and found "no convincing evidence in the record that obesity increases the severity or functional limitations of any other impairment" to a level that satisfies a listing, SSR 02-01, or results in disability, as defined in the Act or Regulations. The ALJ complied with SSR 02-01; Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge